UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Northern Division

CELEBREE ENTERPRISES, LLC,
a Maryland limited liability company,
1306 Belona Avenue
Lutherville, Maryland 21093,

and

CELEBREE HOLDING, INC.
a Maryland corporation,
1306 Belona Avenue
Lutherville, Maryland 21093,

        Plaintiffs,

      v.                                 Civil Action No.:

NEW GENERATION SCHOOL, LLC, a
Virginia limited liability company, IMAD
HAMED HAJ, YAMINA ABDI,
MOHAMMED ALBARDAWIL, and
AMAL ALBARDAWIL,

        Defendants.

_____/

**COMPLAINT**

This is an action for breach of contract arising out of the defendants' multiple breaches of the franchise agreement and other agreements between the parties.  The plaintiffs seek their damages and their attorneys' fees and costs associated with this action.

Defendant, New Generation School, LLC ("NGS") entered into a franchise agreement with Plaintiff Celebree Enterprises, LLC ("Enterprises") to develop and operate a franchised CELEBREE school in Woodbridge, Virginia and the individual defendants (collectively, the "Guarantors") each agreed to personally guarantee NGS's obligations under that agreement.

- 1 -

Subsequent to entering the franchise agreement, NGS entered into a lease for space at a shopping center in Woodbridge, Virginia where NGS planned to open its franchised CELEBREE school. As a condition of entering the lease with NGS, the landlord for the premises required Enterprises' affiliate, Plaintiff Celebree Holding, Inc. ("Holding") to execute a corporate guaranty of NGS's obligations under the lease.

Despite its obligations to open and operate a CELEBREE school under its franchise agreement and lease, NGS failed to open the franchised business and, instead, defaulted on the lease and franchise agreement. Ultimately, NGS surrendered possession of the premises to the landlord. As a result of NGS's failure to develop and operate the school and loss of possession of the premises, which constituted defaults of the franchise agreement, Enterprises terminated the franchise agreement by its terms. The landlord thereafter filed suit against NGS, the Guarantors (and other individual guarantors of the lease), and Holding to recover its damages under the lease, and Holding agreed to pay $350,000 under its corporate guaranty to resolve the landlord's claims against it.

Enterprises and Holding therefore seek to recover the damages they have incurred as a result of NGS's breach of its obligations under the franchise agreement, including Enterprises' lost future profits arising out of NGS's failure to fulfill its obligations to open and operate a franchised CELEBREE school, indemnification of the $350,000 plus attorneys' fees and costs Holding incurred in resolving the claims against it asserted by NGS's landlord, and the parties' attorneys' fees and costs associated with this action.

## THE PARTIES

1.      Enterprises is a Maryland corporation with its principal place of business in Luthersville, Maryland.

2.      Holding is a Maryland corporation with its principal place of business in Luthersville, Maryland.

3.      Defendant NGS is a Virginia limited liability company with its principal place of business in Woodbridge, Virginia. On information and belief, NGS's sole members are Defendants Imad Hamed Haj and Mohammed Albardawil.

4.      On information and belief, defendant Imad Hamed Haj is a citizen of the District of Columbia and a member of NGS, as well a personal guarantor of NGS's obligations under the terminated franchise agreement between Enterprises and NGS.

5.      On information and belief, defendant Mohammed Albardawil is a citizen of the Commonwealth of Virginia and a member of NGS, as well a personal guarantor of NGS's obligations under the terminated franchise agreement between Enterprises and NGS.

6.      On information and belief, defendant Yamina Abdi is a citizen of the District of Columbia, as well a personal guarantor of NGS's obligations under the terminated franchise agreement between Enterprises and NGS.

7.      On information and belief, defendant Amal Albardawil is a citizen of the Commonwealth of Virginia, as well a personal guarantor of NGS's obligations under the terminated franchise agreement between Enterprises and NGS.

## JURISDICTION AND VENUE

8.      This is a civil action arising under the contracts between the parties.

9.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332.

10.     Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to these claims occurred in this District,

and pursuant to the agreements between the parties, in which they agreed to jurisdiction and venue in this District.

<div align="center">

**THE CELEBREE SYSTEM**

</div>

11.     Enterprises is the franchisor of the CELEBREE school franchise system. CELEBREE schools offer infant care, pre-school, before and after-school programs for school-aged children, summer camps, back-up care, and emergency care for children who are between six weeks and 12 years old. Enterprises licenses third parties to operate schools using the CELEBREE name and service marks (the "CELEBREE Marks").

12.     In addition to using the CELEBREE Marks, franchised CELEBREE schools are operated in accordance with Enterprises' standards, specifications, and methods, using business materials and know-how provided by Enterprises (the "Celebree System").

13.     The standards, specifications, and methods of the Celebree System are set forth in Enterprises' confidential and proprietary operations manual, a copy of which is provided to all Celebree franchisees (the "Manual").  The Manual includes detailed standards, specifications, instructions, requirements, methods and procedures for opening, operating, marketing, and managing a franchised CELEBREE school.

<div align="center">

**THE FRANCHISE AGREEMENT BETWEEN THE PARTIES**

</div>

14.     Enterprises and NGS entered into a franchise agreement (the "Franchise Agreement"), with an Effective Date of April 4, 2022,  governing the operation of a CELEBREE school at a to-be-determined location in Prince William County, Virginia (the "School").  A true and correct copy of the Franchise Agreement is attached hereto as Exhibit 1.

15.     Concurrent with NGS's execution of the Franchise Agreement, Defendants Haj, M. Albardawil, Abdi, and A. Albardawil (collectively, the "Guarantors") executed a "Guarantee

and Assumption of Franchisee's Obligations" (the "Guarantee"), pursuant to which the Guarantors jointly and severally guaranteed NGS's payment obligations under the Franchise Agreement and to Enterprises and its affiliates, and to be personally bound by NGS's obligations under the Franchise Agreement, including all indemnification obligations, and to be personally (and jointly and severally) liable for NGS's breach of the Franchise Agreement.  A true and correct copy of the Guarantee is attached as Exhibit 2.

16.    Pursuant to Sections 2.1 and 2.3 of the Franchise Agreement, NGS was licensed, and undertook the obligation, to operate the School as a franchised CELEBREE school for a period of ten years from the date of the School opened for business. Under Section 3.1.2, NGS was obligated to open the School within two years of the Effective Date, or by April 4, 2024.

17.    Pursuant to Sections 4.2, 4.3, and 4.4 of the Franchise Agreement, NGS was obligated to make certain ongoing payments to Enterprises on a monthly basis, including a royalty fee equal to seven percent of the monthly gross revenues of the School and a Brand Fund Contribution, equal to one percent of the monthly gross revenues of the School.

18.    Under Section 20.1 of the Franchise Agreement, NGS agreed to indemnify and hold harmless Enterprises and its affiliates for any losses that Enterprises or its affiliates suffered, sustained, or incurred as a result of a claim asserted against Enterprises or its affiliates in a legal action or other proceeding brought by a third party that directly or indirectly arose out of NGS's development and operation of the School or NGS's breach of the Franchise Agreement or any other agreement with Enterprises or any third party.

**THE LEASE FOR THE SCHOOL PREMISES**

19.    NGS entered into a lease agreement with Rock Creek – Center Plaza LLC (the "Landlord") dated September 30, 2024 (the "Lease") to lease premises located at 4351, 4353,

4355, 4357, 4359, 4361, 4363, and 4365 Dale Boulevard in Woodbridge, Virginia (the "Premises") for the operation of the School. A true and correct copy of the Lease is attached as Exhibit 3. Under the terms of the Lease, NGS was obligated to open the School by October 1, 2025.

20.    Concurrent with NGS's execution of the Lease, Holding executed a "Guaranty of Lease Agreement" (the "Lease Guaranty"), pursuant to which Holding guaranteed NGS's payment and performance obligations under the Lease. Holding's maximum liability under the Lease Guaranty was capped at $400,000, plus any reasonable attorneys' or expenses incurred by the Landlord in enforcing its rights under the Lease or Lease Guaranty. Holding's maximum liability under the Lease Guaranty would be reduced by $100,000 on each anniversary of the Effective Date of the Lease, provided NGS was not in default of the Lease. A true and correct copy of the Lease Guaranty is attached as Exhibit 4.

**<u>NGS'S DEFAULT OF THE LEASE AND THE FRANCHISE AGREEMENT</u>**

21.    Notwithstanding its obligations under the Lease and Franchise Agreement to develop and open the School at the Premises, NGS failed to open the School by October 1, 2025.

22.    By letter dated October 20, 2025 (the "Lease Default"), the Landlord (through counsel) notified NGS that it was in default of the Lease for failing to pay rent, failing to begin construction of the School or open the School for business, failing to obtain construction permits, and failing to repay the remediation allowance under the Lease. In the Lease Default, the Landlord also provided notice to Holding of NGS's defaults and demanded that Holding make payment for NGS's defaults. A true and correct copy of the Lease Default is attached as Exhibit 5.

23.     Prior to and subsequent to receiving the Lease Default, NGS (though its counsel) advised Enterprises and Holding that NGS did not have funds to proceed with opening the School or to pay the Landlord for its damages arising out of NGS's breach of the Lease.

24.     Because it was unable to cure its defaults under the Lease, NGS entered into a Surrender of Possession Agreement with the Landlord dated November 6, 2025, under which NGS turned over possession of the Premises to the Landlord. A true and correct copy of the Surrender of Possession Agreement is attached as Exhibit 6.

25.     By letter dated December 10, 2025 (the "Termination Notice"), Enterprises notified NGS that it was terminating the Franchise Agreement effectively immediately as a result of NGS's defaults of that Agreement, namely failing to open the School for business, failing to cure timely its defaults of the Lease, and surrendering possession of the Premises of the School. Enterprises demanded that NGS comply with its post-termination obligations under the Franchise Agreement, including its obligation to indemnify Holding for any amounts paid under the Lease Guaranty. Enterprises also notified Guarantors that they were jointly and severally liable to Enterprises for all of NGS's monetary obligations under the Franchise Agreement. A true and correct copy of the Termination Notice is attached as Exhibit 7.

26.     Under Section 19.1.2 of the Franchise Agreement, upon termination of the Franchise Agreement, NGS was obligated to pay all amounts owed to Enterprises and its affiliates (including Holding). NGS agreed that if termination of the Franchise Agreement was a result of NGS's default of that Agreement, NGS would owe Enterprises all damages, costs, and expenses Enterprises incurred as a result of the default, including reasonable attorneys' fees.

## THE LANDLORD'S LAWSUIT

27.     On December 15, 2025, the Landlord filed a lawsuit in Prince William County, Virginia Circuit Court against, NGS, Guarantors, and Holding (among others) (the "Action")

seeking to recover $1,147,841.55 in damages arising out of NGS's breach of the Lease, as well as to recover $400,000, plus attorneys' fees and costs from Holding under the Lease Guaranty. A true and correct copy of the complaint in the Action is attached as Exhibit 8.

28.     In order to mitigate its damages, Holding negotiated and entered into a Settlement Agreement and Mutual Release with the Landlord (the "Settlement Agreement"). Under the Settlement Agreement, Holding agreed to pay the Landlord $350,000 in exchange for dismissing the Action as to Holding and releasing Holding from any further obligations under the Lease and Lease Guaranty. A true and correct copy of the Settlement Agreement is attached as Exhibit 9.

29.     Holding paid the Landlord (though the Landlord's counsel) $350,000 on December 29, 2025. The Landlord moved to dismiss Holding from the Action on December 30, 2025, and Holding the court entered an order dismissing Holding with prejudice from the Action on January 21, 2026.

30.     By letters dated February 13, 2026, Enterprises made demand on NGS and Guarantors to pay Enterprises its lost future royalties arising from the premature termination of the Franchise Agreement, totaling $1,568,120 as well as demanding that NGS and Guarantors indemnify Holding for the $350,000 Holding had paid Landlord under the Settlement Agreement to resolve the claims against Holding asserted in the Action.

31.     NGS and Guarantors have failed to respond to Enterprises demand letters and have not paid any amount to Enterprises or Holding.

## <u>COUNT ONE</u>

**(Breach of Contract – Lost Future Royalties under Franchise Agreement)**

32.     Enterprises realleges Paragraphs 1-31 of this Complaint.

33.     The Franchise Agreement was a valid and enforceable contract between NGS and Enterprises.

34.     Under the terms of the Franchise Agreement, NGS agreed to develop and open the School and operate the School for ten years, paying royalty fees and other amounts to Enterprises during the term of the Franchise Agreement.

35.     NGS's failure to open the School and loss of the Premises constitute breaches of the Franchise Agreement.

36.     Enterprises performed all of its obligations under the Franchise Agreement.

37.     As a result of NGS' breach of the Franchise Agreement, Enterprises terminated the Franchise Agreement.

38.     Enterprises has been damaged by NGS's breach of the Franchise Agreement in form of lost future profits from NGS's operation of the School and payment of royalties and other amounts to Enterprises during the term of the Franchise Agreement, and all fees and expenses incurred in this action (including reasonable attorneys' fees), in an amount to be proved at trial, but not less than $1,568,120, plus interest.

## COUNT TWO

### (Breach of Contract – Indemnification)

39.     Enterprises realleges Paragraphs 1-31 of this Complaint.

40.     The Franchise Agreement was a valid and enforceable contract between NGS and Enterprises.

41.     Under the terms of the Franchise Agreement, NGS agreed to indemnify Enterprises and Holdings for any damages, losses, or expenses they incurred arising out of

NGS's development and operation of the School or NGS's breach of any agreement with Enterprises, Holding, or any third party.

42. Holding incurred damages and expenses totaling $350,000, plus attorneys' fees, in connection with NGS's breach of the Lease and failure to open the School.

43. NGS has failed to indemnify Holding for the losses Holding incurred in connection with NGS's breach of the Lease and failure to open the School.

44. NGS's failure to indemnify Holding constitute breaches of the Franchise Agreement.

45. Enterprises performed all of its obligations under the Franchise Agreement.

46. Enterprises has been damaged by NGS's breach of the Franchise Agreement in form of the damages and expenses Holding has incurred which NGS has not reimbursed pursuant to its agreement to indemnify Enterprises and its affiliates, and all fees and expenses incurred in this action (including reasonable attorneys' fees), in an amount to be proved at trial, but not less than $359,315, plus interest.

## <u>COUNT THREE</u>

### (Common Law Subrogation)

47. Holding realleges Paragraphs 1-31 of this Complaint.

48. Under the terms of the Lease Guaranty, Holding agreed to guaranty NGS's performance and payment obligations under the Lease up to a maximum amount of $400,000.

49. As a result of NGS's default of the Lease, the Landlord sued Holding for $400,000 under the Lease Guaranty.

50.     Holding voluntarily incurred damages and expenses totaling $350,000, plus attorneys' fees, in connection with settling the Landlord's claims against Holding as guarantor of NGS's obligation under the Lease pursuant to the terms of the Lease Guaranty.

51.     Under the equitable doctrine of subrogation, Holding is entitled to recover from NGS the losses Holding incurred in connection with settling the Landlord's claims against Holding as guarantor of NGS's obligation under the Lease pursuant to the terms of the Lease Guaranty.

52.     Holding has been damaged in an amount to be proved at trial, but not less than $359,315, plus interest.

## COUNT FOUR

### (Common Law Indemnification)

53.     Holding realleges Paragraphs 1-31 of this Complaint.

54.     Under the terms of the Lease Guaranty, Holding agreed to guaranty NGS's performance and payment obligations under the Lease up to a maximum amount of $400,000.

55.     As a result of NGS's default of the Lease, the Landlord sued Holding for $400,000 under the Lease Guaranty.

56.     Holding voluntarily incurred damages and expenses totaling $350,000, plus attorneys' fees, in connection with settling the Landlord's claims against Holding as guarantor of NGS's obligation under the Lease pursuant to the terms of the Lease Guaranty.

57.     NGS has a common law duty to indemnify Holding for amounts Holding paid to the Landlord under the Lease Guaranty relating to amounts that NGS owed to the Landlord under the Lease.

58. Holding is entitled to recover from NGS the losses Holding incurred in connection with settling the Landlord's claims against Holding as guarantor of NGS's obligation under the Lease pursuant to the terms of the Lease Guaranty.

59. Holding has been damaged in an amount to be proved at trial, but not less than $359,315, plus interest.

## COUNT FIVE

### (Action on Personal Guaranty)

60. Enterprises realleges Paragraphs 1-31 of this Complaint.

61. By executing the Guarantee, Guarantors jointly and severally guaranteed NGS's obligations and agreed to make all payments due to Enterprises that were due under the Franchise Agreement, including Enterprises' damages and costs and expenses incurred in any action to enforce Enterprises' rights under the Franchise Agreement.

62. Enterprises provided written notice to Guarantors that NGS was in default of its obligations under the Franchise Agreement and demanded that Guarantors fulfill those obligations.

63. Enterprises made demand on Guarantors to fulfill their obligations to pay amounts owed by NGS under the Franchise Agreement, and Guarantors have failed to pay those amounts.

64. Guarantors are each obligated jointly and severally under the Guarantee to pay Enterprises all amounts owed by NGS under the Franchise Agreement, including Enterprises' damages and costs and expenses incurred in this action, in an amount to be proven at trial, but not less than $1,927,435, plus interest.

## PRAYER FOR RELIEF

**WHEREFORE**, Enterprises and Holding demand entry of judgment in their favor awarding the following relief:

1.      Awarding Enterprises its damages resulting from the defendants' breach of and premature termination of the Franchise Agreement, in an amount to be proved at trial, but no less than $1,568,120, plus interest;

2.      Awarding Enterprises and Holding their damages resulting from the defendants' failure to indemnify and reimburse Holding for its losses incurred in connection with fulfilling NGS' obligations under the Lease and Holding's guaranty of those obligations under the Lease Guaranty, in an amount to be proved at trial, but no less than $359,315, plus interest;

3.      Awarding Enterprises its costs in prosecuting these claims, including its reasonable attorneys' fees incurred, in accordance with the Franchise Agreement and applicable law; and

4.      Such other and further relief as the Court may deem appropriate.

<div style="margin-left: 50%;">

 /s/Benjamin B. Reed
Benjamin B. Reed
DMD Bar No. 31694
breed@plavekoch.com

Nathan D. Baney
DMD Bar No. 19724
nbaney@plavekoch.com

PLAVE KOCH PLC
3120 Farview Park Drive, Suite 240
Falls Church, Virginia  22042
703-774-1200 (phone)
703-774-1201 (fax)

*Attorneys for Plaintiffs Celebree Enterprises, LLC and Celebree Holding, Inc.*

</div>

March 27, 2026